## WILLIAM E. LEE, appellant,

*v.*

## ANNA E. BABCOCK et al., respondents.

The peculiar language of the will, in this case, was held to give the respondent (testator's widow) a life interest in the residuary estate, *in specie*, with the right to use the same without any legal accountability to her co-executor

or to the remaindermen, although the personalty included four coasting vessels, which would, since the testator died in 1880, and the average life of such vessels is ten or twelve years, be entirely used up by her.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

Construction of a will is asked for. Job G. Babcock died in December, 1880. He left a will in his own handwriting. Considering the nature of the discussion, and the claim of the counsel of the defendant, Mrs. Babcock, it seems quite necessary that I should give portions of the will in the language in which they were expressed by the testator. It is insisted that this is necessary, in order to enter into the mind and to ascertain the intention of the testator. He says:

"1. I give to William E. Lee, son of Irving Lee, the peas of land that I bought of Samuel G. Price and all the meadow land I own in Galloway Township and in undivided intrust in the Fleming Plais and one eighth of one of the vessels that I own at my death, if I own any he is to have his chois of them.

"2. I give to Franch Babcock Sun of Joseph W. Babcock my intrust in the land I own in Eggharbour Towship bought of Thomas Ireland.

"3. I give to Job G. Lee one eighth of one of the vessels that is if I own them at my death he is to have whatever one William E. Lee and Anna E. Babcock my well beloved wife may celect for him.

"Now I give to my well beloved wife Anna E. Babcock all of the remainder of my property both realstat and personal, I repeat it I give to my well beloved wife Anna E. Babcock all of my real estate and personal property hur naturel lifetime and I direct that she shall pay to the following persons as follows, My well beloved wife Anna E. Babcock shall pay to Johanna B. Cerdery three hundred dollars and to Anna B. Ryon three hundred dollars and to each of my own Brothers and Sisters children Two hundred dollars, that is to say to each one that is living at my death at this writing, I believe thair is 33 but whatever thair may be living at my death all to be paid within two years from my death to be paid to the children wair they air of age and wair they air not to be paid to thair Mother or Father that is Brother or Sister of mine, and my well beloved wife Anna E. Babcock may pay them in notes or mortgages that I hold if she prefers if she has not the money collected say for in—stance thair is 8 children in one family and I hold a mortgage of 1000 Dollars she can asign them that and let them colect themselves if they want it collected and further my well beloved wife Anna E. Babcock shall pay Elmira Garwood my sister one hundred dollars a year as long as she remains a widow, All of the

Lee v. Babcock.

children above mentions air to have the two hundred wether they have had any left by me or not, none air excluded by wat I have given them before, now I wish everything to remain in the house furniture and I give it all to my well beloved wife hur naturel lifetime and horse or horses cariges harnis in fact every thing to remain to be no praisment as I ow no debts.

"Now I constitute and appoint Anna E. Babcock with William E. Lee my Administrators if it needs any to setel and to comply with the will, further now at my beloved wife death Anna E. Babcock with everything that is thair furnitur hors cariges and so on to William E. Lee, son of Urving Lee.

"And I give to Job G. Babcock son of Franch F. Babcock an Eliza Babcock his wife one thousand dollars out of the personal property if thair is that left and the balance I give to William E. Lee to the amount of Seven Thousand 7000 Dollars and what thair is left after the above I wish it devided with the porest of my Brothers and Sisters.

"And I constute William E. Lee together with Lewis and Abel E. Babcock my Brothers to distribute wat' may be left and to thair judgment who is the porest and the most kneed of it, this is my last will—Testament."

The complainant is not only one of the executors named in the said will, but is also one of the legatees and devisees therein named. It appears by the bill that the vessel property named in the will, given to the legatees therein named, has been handed over to them, and that portions of several of the general legacies therein given have been duly paid. It appears, also, that the executors have proceeded to file two partial accounts in the orphans court, which have been reported upon and declared by the decree of the court to be correct, and that a third partial account has also been filed, which, after exceptions, was also declared to be correct, which shows a residuum in the hands of the executors of $26,184.80. The bill charges that, although the said executors have thus jointly accounted, the sole possession and control of all the assets of the said estate has been had by the said Anna E. Babcock, and that she claims to have the absolute possession of the estate and property therein, under and by virtue of the said will, denying that she is a tenant for life simply. The bill further claims that, whilst the said Anna E. Babcock has had such possession, and makes such claims, the complainant, in his own behalf, and in behalf of others, legatees, insists that, upon a proper construction of the will, the said Anna E. is a legatee for life only of the said residuum, and is not entitled to the sole and exclusive possession and control of the residuum as against the

Lee v. Babcock.

complainant, her co-executor, and is not entitled to dispose of the said residuum, but is liable to account for the same.

This question is particularly interesting to the persons named as residuary legatees, because of the perishable nature of the property called vessel property. One vessel is valued at $3,250, one at $520, one at $2,000, and one at $100; and the allegation is, that the ordinary life of such a vessel is only about ten years. It will be seen that, the testator having died in 1880, it is of consequence to this complainant, and to the other residuary legatees, to know whether they have any interest in such property, and to secure the principal according to what is claimed to be the proper construction of the will, which she refuses to do, insisting that she is entitled to the receipts and dividends derived from the employment of these vessels in active service, even though such service consume them. The prayer of the bill is, that the court may determine the interest in the residuum of the personal property so bequeathed to Mrs. Babcock, whether absolute and unqualified, or whether simply for her life. And whether she is entitled to the absolute possession and control of it, *in specie*, as against the complainant; and, if that be so, then, whether in such case the complainant, as co-executor, is responsible for any depreciation or loss; and whether, if the said Anna E. Babcock is entitled to the sole possession and control, she will be liable to account for any loss or depreciation in the value to any of the persons interested therein; and whether it was or is the duty of the said Anna E. Babcock to sell the said vessels and to re-invest the proceeds, and whether, if she does not, she is liable to account for any loss.

Two principal questions seem to be presented by the bill and answer: first, is the interest of Mrs. Babcock in the residuum only for life; and, secondly, if only for life, what is the nature or extent of her interest therein? The latter, perhaps, is the real question in dispute between the parties. I think the real contention upon the part of the complainant is, that it is the duty of Mrs. Babcock to join with the complainant, her co-executor, in making sale of all the goods and chattels of the decedent, and especially the vessels referred to, thereby converting them into

money, taking the use of the money for Mrs. Babcock rather than the profits or dividends derived from the employment of the vessels in trade.

First, that whatever was given to Mrs. Babcock was for life only, seems to me to be quite clear. The testator uses this language: "I give to my well beloved wife Anna E. Babcock all of the remainder of my property both realstat and personal," then adding, "I repeat it I give to my well beloved wife all my real estate and personal property hur naturel lifetime." Then directing payments to be made throughout to a large number of his relatives, thirty-three in all. The direction is, that she shall pay to the persons named. He says: "And my well beloved wife Anna E. Babcock may pay them in notes or mortgages that I hold if she prefers if she has not the money." Again, "and further my well beloved wife Anna E. Babcock shall pay Elmira Garwood my sister one hundred dollars a year as long as she remains a widow." Here, then, is not a gift for life without any limitation, or gift over of the residue, or any portion thereof; but such language is used, making disposition of large portions of the residue, as seems distinctly to bring the case within numerous decisions lately made in our state. *Pratt* v. *Douglas, 11 Stew. Eq. 516; Borden* v. *Downey, 7 Vr. 460, 466; Logue* v. *Bateman, 16 Stew. Eq. 434; Rhodes* v. *Shaw, 16 Stew. Eq. 430.*

But how extensive are the rights of Mrs. Babcock in the use of this property, during her lifetime, is the more serious question. The language of the testator is:

"I wish everything to remain in the house furniture and I give it all to my well beloved wife hur naturel lifetime and horse or horses cariges harnis in fact every thing to remain to be no praisment as I ow no debts."

He then appoints his wife and the complainant administrators [executors], if it needs any to settle and to comply with the will, "further now at my well beloved wife death Anna E. Babcock with everything that is thair furnitur hors cariges and so on to William E. Lee, son of Urving Lee." Then, it will be seen, that he provides that William E. Lee shall have the sum of

$7,000, and that what there is left after said payments shall be divided among the poorest of his brothers and sisters.

I think the only section in the will that looks towards the contention claimed to be the proper interpretation by the defendants, is the phrase in which the testator says that he wished everything to remain in the house. In that he undoubtedly referred to the articles named only, for he says "furniture," meaning the furniture that was in the house to go to his wife during her lifetime, "and horse or horses cariges harnis in fact every thing to remain to be no praisment as I ow no debts." He had previously disposed of portions of his land, in paragraphs numbers one and two of his will. In paragraph number three he disposed of two of his vessels. It is the phrase, therefore, directing everything to remain in the house, and that there shall be no appraisement, giving the entire personal property, not otherwise specifically bequeathed, to Mrs. Babcock, her lifetime, to such an extent as to preclude the right of the other legatees named in the will to demand the sale of so much of the personal property as will necessarily perish in the using.

Now, if the will be again examined, it will appear that there is a gift of real and personal estate in the same clause; so that the gift of the personalty, which would otherwise appear to be specific, is not, were it not for what follows. *2 White & T. Lead. Cas. Eq. 646; Norris* v. *Thomson, 1 C. E. Gr. 218, 542; Schoul. Exrs.* § *462 a; Theob. Wills 100, 104, 111.* The qualification of the rule does not reach this case; but the same clause concludes in these words:

"Now I wish everything to remain in the house furniture and I give it all to my well beloved wife her naturel lifetime and horse or horses cariges harnis in fact every thing to remain to be no praisment as I ow no debts."

This last phrase would seem to show that the testator certainly desired his wife to enjoy all of the personal property left at his death, *in specie,* and this the law tolerates. *Schoul. Exrs.* § *462; Wms. Exrs. 1271 (1177).* Furthermore, the mind is led on to this conclusion by the next clause, which, after naming the executors, provides that at the death of his widow, everything that

Lee v. Babcock.

remains, horses, carriages and so on, shall go to William E. Lee, son of Irving Lee. And, yet, while the last clause referred to seems beyond any doubt to carry the goods *in specie* to the widow for life and also to William E. Lee, this last conclusion seems to be again excluded by the very next clause, in which he gives a legacy of $1,000 out of his personal property, if there be that left, and the balance he gives to William E. Lee to the amount of $7,000, which is followed by the bequest of the balance to his poorest brothers and sisters, thus showing that there must be a sale to effect a division.

But notwithstanding these last considerations, intended to give all of his personal property *in specie* to his widow for her own use, during her lifetime, I admit that I have not reached this conclusion very readily as to the gift to the wife generally, and my mind has dissented long from the conclusion that the vessels were intended to be included in such gift; but I am unable to give any satisfactory reason for such dissent. The testator declared that everything should remain to his widow, and that there should be no appraisement. "Everything" must include the vessels. The direction not to make an appraisement, it may be, is not binding on the co-executor (I do not decide that), but it most strongly indicates that the testator did not intend to place the legatee for life under any obligations.

Attendant upon these principal questions is another, as to the right of the widow, also executrix with William E. Lee, to the exclusive possession of the said goods and chattels. I have no doubt but that the will gives her such exclusive or absolute right, unless she is guilty of some wrong with respect to the same; otherwise, the object of the testator, her enjoyment of them by using them, would be liable to be measurably, if not wholly, defeated.

Although there be other prayers, I think there are no sufficient charges in the bill for them to rest upon, without which all effort to discover either the true relations of the parties, or their legal liability, would be to no good purpose.

Thus I have indicated what decree I will advise.

*Messrs. Potter & Nixon,* for the appellant.

*Mr. Allen B. Endicott* and *Mr. David J. Pancoast,* for the respondents.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the vice-chancellor.